BUSHIE *v.* JOHNSON.

1. AUTOMOBILES—GUEST ACT—GROSS NEGLIGENCE—WILFUL AND WANTON MISCONDUCT.

Under the guest act, the owner or operator of a motor vehicle is not liable for the death of a guest unless the fatal accident was caused by the gross negligence or wilful and wanton misconduct of the owner or operator (1 Comp. Laws 1929, § 4648).

2. SAME—OPERATION OF CAR—CONSENT OF SON OF OWNER.

Driver of car who operated it in the presence and with the consent of the son of the owner who had consented to son's use of the car was the *alter ego* of the son and, therefore, driving the car with the consent of the owner and his acts are, in legal effect, the acts of the owner with respect to latter's liability under the guest act for death of passenger (1 Comp. Laws 1929, § 4648).

3. SAME—SPEED—WARNINGS TO SLOW DOWN—GROSS NEGLIGENCE.

Mere excessive speed and failure to heed repeated warnings to driver to slow down or drive more slowly do not make the driver guilty of gross negligence under the guest passenger act (1 Comp. Laws 1929, § 4648).

4. SAME—GUEST'S REQUEST AS TO SPEED—WILFULNESS.

Motorist's noncompliance with request of a guest passenger relative to speed is not of itself evidence of wilfulness or wantonness under guest act (1 Comp. Laws 1929, § 4648).

5. SAME—STATEMENT BY DRIVER—SPEED—WILFUL AND WANTON MISCONDUCT.

Motorist's statement "watch me give them a real scare," made after guest passengers had asked him to drive more slowly, did not establish fact that he was driving in a wanton and reckless manner under the guest passenger act (1 Comp. Laws 1929, § 4648).

---

For discussion of wanton and wilful misconduct, see comment to 2 Restatement, Torts, § 500 and see § 282 and special note thereto.

See, generally, 2 Restatement, Torts and comment to § 491 for the common law rule as to injuries through the negligence of one of them, of parties engaged in a joint adventure.

Factors in determining joint enterprise and functions of court and jury on this question, see 2 Restatement, Torts, § 491 comment (g).

6. Same—Speed—Zigzagging—Straddling Center of Road—Gross Negligence.

Fact that car which was driven fast by a driver who had been drinking beer and who had been requested to drive more slowly was swaying, zigzagging from side to side, and straddling the center of the road was insufficient to constitute gross negligence under the guest passenger act (1 Comp. Laws 1929, § 4648).

7. Same—Gross Negligence—Speed—Zigzagging.

Motorist who had been drinking beer and, with the exception of a few miles, failed to heed repeated requests of guest passengers to drive more slowly, drove 60 to 70 miles an hour on new blacktop pavement, stated to owner's son in the car, "watch me give them a real scare," and lost control of car after coming out of an S-curve, *held*, as a matter of law, not guilty of gross negligence or wilful and wanton misconduct in action for death of guest passenger (1 Comp. Laws 1929, § 4648).

8. Negligence—Joint Enterprise.

If occupant of automobile was engaged in joint enterprise with driver thereof who was negligent, driver's negligence would be imputed to occupant and bar recovery of damages for his death from ensuing accident.

Bushnell, Chandler, and McAllister, JJ., dissenting.

Appeal from Iron; Bell (Frank A.), J. Submitted October 15, 1940. (Docket No. 76, Calendar No. 41,188.) Decided January 6, 1941.

Case by Caroline Bushie, administratrix of the estate of George Bushie, deceased, against Arthur W. Johnson, Earl Johnson, and James Gallagher for damages for death of plaintiff's decedent in an automobile accident. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Ray Derham,* for plaintiff.

*M. S. McDonough* and *H. J. McDonough,* for defendants.

Boyles, J. This is a suit under the guest act for fatal injuries to plaintiff's decedent, George Bushie,

received while riding as a claimed guest in an automobile owned by defendant Arthur W. Johnson, in possession of defendant Earl Johnson (his son), and driven by defendant James Gallagher. At the close of plaintiff's case, and again at the end of the testimony, defendants moved for a directed verdict. These motions were taken under advisement and the case submitted to the jury. Plaintiff had verdict against all defendants for $2,500. Defendants moved for judgment notwithstanding the verdict. The court granted the motion and entered judgment for defendants, from which judgment plaintiff appeals.

As the cause of action, plaintiff's amended declaration alleged that the defendants were guilty of gross negligence and wilful and wanton misconduct; that the decedent was a guest passenger and not engaged in a joint venture with the defendants but was riding in the car as a nonpaying guest. The case was tried and submitted to the jury under the guest passenger act upon the theory that the defendants were guilty of gross negligence and wilful and wanton misconduct. The jury was instructed that the plaintiff must establish by a preponderance of the evidence that James Gallagher, the driver of the car, was guilty of gross negligence or wilful and wanton misconduct. No error has been assigned by defendants on any part of the charge to the jury.

Taking the evidence in the light most favorable to the plaintiff, the facts in the case are these: Early in the forenoon of Sunday, June 27, 1937, Earl Johnson, James Gallagher, one Einar Strom, and two others came together at a filling station near Iron River. Earl Johnson was using the car of his father, defendant Arthur W. Johnson, with his consent. They decided to go to a beer tavern, where they stayed for a while, and plaintiff's decedent, George Bushie, joined them there. They were all young

men about 20 to 23 years of age. While in this first beer tavern they each drank about six rounds of beer. About 11:30 o'clock they decided to go to another tavern, where they stayed for a time drinking beer. Earl Johnson and James Gallagher left the party and went to Johnson's home around 1 o'clock for Johnson to change his clothes. James Gallagher remained in the car while Johnson went inside the house, and then they returned to the beer tavern where they had left the other members of the party. They drank some more beer there, the party at that time including Earl Johnson, Einar Strom, James Gallagher, George Bushie, and two others. It was then decided to go to another drinking place across the State line in Wisconsin. They started out in the Johnson car, James Gallagher driving. Bushie and Strom either invited themselves to go along, or were invited, and rode in the rear seat. Earl Johnson rode beside Gallagher, the driver. On the way there Strom cautioned Gallagher about driving too fast and says that he would then slow down. They spent some time at this tavern in Wisconsin drinking beer or tomato juice and playing slot machines. Sometime around 3 o'clock or later in the afternoon the four men started on the return trip to Iron River, James Gallagher still driving, Earl Johnson beside him, and Bushie and Strom in the rear seat. Strom several times cautioned Gallagher to drive slower and Gallagher would slow down and then after a few miles go fast again. Strom warned him of speed on the curves. Somewhere near the State line on the return trip the car was stopped and two or more of the party got out to answer nature's call. Gallagher and Johnson both testify they do not remember what happened after that. Strom says that Gallagher drove 60 to 70 miles an hour and sort of zigzagged. Strom

is plaintiff in a companion case against these defendants and his testimony was to some extent impeached. There were a number of curves between the last drinking place and the point where the accident finally occurred. Strom warned Gallagher of several curves ahead and testified that Gallagher said to Johnson "Watch me give them a real scare." They both deny that. He accelerated the speed to 70 miles per hour. The road was a new blacktop pavement, two lanes wide. It was a bright summer day. The driver was fully familiar with the highway in question. Gallagher successfully navigated all the curves but, after coming out of an S-curve, onto a straight road, the car went off the pavement and ran into a large tree. Bushie died as a result of the injuries caused by this accident.

We accept the claim of the plaintiff in her declaration that plaintiff's decedent was a guest passenger in the car owned by defendant Arthur W. Johnson, in the possession of his son, defendant Earl Johnson, and driven by defendant James Gallagher, with consent of the owner. Bushie was not a passenger for hire. Under these circumstances, plaintiff cannot recover unless the accident was caused by the gross negligence or wilful and wanton misconduct of the owner or operator of the vehicle. 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446). Applying the rule laid down in *Marchand* v. *Russell,* 257 Mich. 96, to this case, Gallagher, the driver, was the *alter ego* of Earl Johnson and, therefore, driving the car with the consent of the owner. His acts are in legal effect the acts of the owner.

Plaintiff relies upon testimony of speed, zigzagging, repeated warnings to the driver, and the driver's statement, "Watch me give them a real scare." There was no testimony as to the degree of the curves. Mere excessive speed does not con-

stitute gross negligence. *Balcer* v. *Railway Co.,* 266 Mich. 538; *Fink* v. *Dasier,* 273 Mich. 416; *In re Mueller's Estate,* 280 Mich. 203; *Bielawski* v. *Nicks,* 290 Mich. 401. Repeated warnings to the driver to slow down or drive slower do not make the driver guilty of gross negligence. *Bobich* v. *Rogers,* 258 Mich. 343; *Pawlicki* v. *Faulkerson,* 285 Mich. 141. Noncompliance with the request of a guest passenger relative to speed is not of itself evidence of wilfulness or wantonness. *Bobich* v. *Rogers, supra; Mogill* v. *Resnick,* 263 Mich. 103; *Fink* v. *Dasier, supra; Schlacter* v. *Harbin,* 273 Mich. 465. Gallagher's statement, "Watch me give them a real scare," does not establish the fact that he was driving in a wanton and reckless manner. The case at bar is readily distinguishable from *Boswell* v. *Docsa,* 285 Mich. 559, where the driver while in great anger, cursing the occupants of his car, intentionally swerved his car from side to side, driving from 80 to 85 miles an hour. The fact that a defendant's car was swaying, zigzagging from side to side, straddling the center, does not constitute gross negligence. *Bielawski* v. *Nicks, supra.* The trial court did not err in holding that defendant driver was not guilty of gross negligence or wilful and wanton misconduct.

Appellant claims that the defense of joint enterprise was not pleaded, nor raised, during the trial, therefore, cannot now be raised. However, the amended declaration expressly alleges that George Bushie was not engaged in a joint venture with defendants but was riding as a nonpaying guest without a common purpose. The answers of all defendants denied this allegation. The trial court, in his opinion granting the defendants' motion for judgment *non obstante veredicto,* found that the occupants of the car were engaged in a joint enterprise for a common purpose within the meaning of *Hanser*

v. *Youngs,* 212 Mich. 508.   Assuming, but not decid-
ing, that the facts of the case establish a joint enter-
prise, such holding would not benefit the plaintiff.
On the contrary, it would bar a recovery.   The trial
court held that, at most, Gallagher was guilty only of
ordinary negligence, and the negligence of Gallagher
would be imputable to George Bushie.   *Moore* v.
*United States Truck Co.,* 260 Mich. 56.

"If they were engaged in a joint enterprise, the
negligence of the defendant would be imputable to
the decedent, and would bar a recovery." *Frisorger*
v. *Shepse,* 251 Mich. 121.

See, also, *Hanser* v. *Youngs, supra.*
Judgment affirmed, with costs to appellees.

Sharpe, C. J., and North, Wiest, and Butzel, JJ.,
concurred with Boyles, J.

McAllister, J. (*dissenting*). I am of the opinion
that the verdict of the jury should be sustained.

The evidence on behalf of plaintiff shows that on
several occasions during the ride, Gallagher, the
driver of the car, was requested by Strom to drive
more slowly; that he complied with such requests,
although thereafter, he would increase the speed,
until he was again asked to slow down; that, on the
last occasion, when Strom asked him to drive more
slowly, he exclaimed to the person in the front seat
with him, "Watch me give them a real scare;" that
he started driving faster until he reached a speed of
70 miles an hour, and "zigzagged" down the road,
while Strom and plaintiff's decedent both "ducked
for the floor;" that Gallagher lost control of the
car, and crashed into a tree, causing the death of
plaintiff's decedent. The foregoing presented a ques-
tion of fact for the jury as to whether Gallagher
was guilty of gross negligence.   If the jury believed

the testimony, they could conclude that the driver had deliberately imperilled the safety and lives of the passengers in order to scare them, and could find that Gallagher had thus acted in reckless, wanton and wilful disregard of the safety and life of plaintiff's decedent. This would be gross negligence. To hold otherwise would be to lay down a rule that as a matter of law, such a deliberate and perilous threat carried into execution was not in wilful and wanton disregard of the safety of the man who was killed as a result of such conduct.

In *Schneider* v. *Draper,* 276 Mich. 259, evidence for the plaintiff disclosed that defendant had driven his car at more than twice the legal rate of speed on a city street; that he had dodged close to a parked car; that he zigzagged back and forth across the street and ran directly toward a pole, 19 inches from the curb before he attempted to make a turn; that he struck the pole, with the result that a passenger standing on the running board was thrown from the car and killed. It was held that the question of defendant's gross negligence was for the jury. In deciding the case, the court said:

"While Draper's actual intention, whether to dislodge or frighten the boys on the running board or otherwise, would bear upon his intention and its wantonness, plaintiff was not obliged to point out what was actually in his mind. One may not claim freedom from a charge of wilful and wanton misconduct, as a matter of law, and on a plea of innocent intention, if he voluntarily misdrives an automobile into a place of obvious danger if others are within the range of injury from it."

The question of defendant's gross negligence was one of fact.

Contributory negligence is usually a question for the jury. But in no case is a party's contributory negligence a defense to a charge of gross negligence.

There is no evidence that would sustain the claim that plaintiff's decedent, Gallagher, the driver, and the others were engaged in a joint adventure at the time of the accident. In this case, there was no agreement to embark upon any venture. Evidence on behalf of plaintiff disclosed that when Bushie was at the Hillside Tavern, one of the group said they were going to the Pine Acre Tavern, and that they *would be back right away;* that he might as well "take a short ride out there." Defendant Johnson states that Bushie asked to go along on the trip. In either case there was no joint undertaking. There was no entertainment or program planned. There was no agreement to assume any expense. Bushie either went along as an invited guest, or was taken as a favor, which was granted on his request. He had no control over the direction taken, or the route. He had nothing to say about the control of the car. There is no implication in any of the evidence that his directions were to be taken, or that he had anything to say about the trip. He was not expected to contribute to or share in any plan or program or expense. If, under these facts, he is to be held a joint adventurer, any man who accepts a ride in an automobile to go to some particular place is a joint adventurer with the driver. This is not the law.

In *Frisorger* v. *Shepse,* 251 Mich. 121, this court, in remarking upon the incidents of such a joint venture, said:

"The principal issue on the trial was whether, at the time of the accident, the decedent was a guest of the defendant, or whether they were engaged in a common enterprise. If they were engaged in a joint enterprise, the negligence of the defendant would be imputable to the decedent, and would bar a recovery. *Hanser* v. *Youngs,* 212 Mich. 508; *Farthing* v. *Hepinstall,* 243 Mich. 380.

"The undisputed facts in the instant case leave no doubt that the parties were engaged in a joint enterprise. They had agreed on a joint pleasure party. Every member of the party had to do with the management and control of the enterprise. They shared equally in the expense. The fact that the defendant was driving the car is material, but not controlling of the question. As driver, he was acting as agent for the other members of the party. They had as much right to direct its movements and speed as he had. Each had a right to be heard in carrying out the details of the trip. *This equal right of control is a very important matter to be considered in determining whether it was a joint enterprise.*"

In *Farthing* v. *Hepinstall,* 243 Mich. 380, it is said:

"To constitute a joint enterprise between a passenger and the driver of an automobile within the meaning of the law of negligence, there must be such a community of interest in its operation as to give each an equal right of control. There must be a common responsibility for its negligent operation, and there can be no common responsibility unless there is a common right of control. It must be held that the driver is acting as the agent of the other members of the enterprise. The rule of joint enterprise in negligence cases is founded on the law of principal and agent. On no other theory could the negligence of the driver be imputable to a passenger. Being parties to the same enterprise, they are assumed to have common control and possession of the machine. Otherwise, each could not be charged with the negligence of the other. It is not necessary to review the cases in which this question is considered. The subject is discussed and many cases are cited in the annotation to *Keiswetter* v. *Rubenstein,* 48 A. L. R. 1049 (235 Mich. 36).

"In the instant case, the plaintiff claims that at the time of the accident she was riding as a mere

guest of the owner and driver of the car; that the control and possession of the car had been intrusted to her brothers by the defendant; that Thayer drove going to Bay City, and Ralph drove going home; that she had no control over the car or over the driver, and that, just before the accident, she remonstrated with Ralph as to the speed, and vainly endeavored to persuade him to reduce it.

"The defendant claims that the plaintiff with her brothers, Ralph and Thayer, were in equal control of the car; that it had been loaned to the three of them equally for a common purpose, *viz.,* driving to Bay City to attend a church fair. Whether the car was loaned to the three of them or to the two boys only was important as bearing on the plaintiff's equal right of control. It was a disputed question and was controlling of the claim of joint enterprise. It was therefore for the jury."

In the above case, there was conflicting evidence as to whether plaintiff was participating in a joint adventure and, there being a dispute on the facts, the question was one for the jury. In the instant case, there is no evidence whatever that plaintiff's decedent was taking part in a joint enterprise. It was error to hold as a matter of law that the decedent was taking part in a joint adventure at the time of the accident. It would have been error to submit such question to the determination of the jury in view of the absence of any evidence to sustain such a claim.

In *Schneider* v. *Draper, supra,* in holding that a plaintiff's decedent was a guest, and was not engaged on a common venture, the court said:

"The boys were not on a common venture or joint undertaking which relieved Draper of liability, because he had sole control of the car and the other boys had no right to direct its movements. The point is clearly discussed in *Frisorger* v. *Shepse,* 251 Mich. 121."

There was no evidence of joint adventure or common enterprise.

The owner of the car was liable for defendant Gallagher's negligence. Whether the car was being driven with the consent of such owner was left to the jury by the trial court. An owner is liable for the negligence of one who drives with his consent. 1 Comp. Laws 1929, § 4648 (Stat. Ann. § 9.1446).

Plaintiff's decedent was only a guest. Inasmuch as the alleged gross negligence of the driver was a question of fact, the verdict of the jury should be sustained.

The judgment entered notwithstanding the verdict should be set aside, and a judgment on the verdict should be entered, with costs to the plaintiff.

BUSHNELL and CHANDLER, JJ., concurred with McALLISTER, J.